**SIGNED THIS: March 05, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRAPPERS CREEK, LLC, | ) | No. 07-82646 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| RICHARD E. BARBER, Chapter 7 Trustee for TRAPPERS CREEK, LLC, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 09-8067 |
| | ) | |
| CENTRAL BANK ILLINOIS, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court on the Motion for Summary Judgment filed by the Plaintiff, Richard E. Barber (TRUSTEE), in his capacity as Chapter 7 Trustee for the estate of the Debtor, Trappers Creek, LLC (DEBTOR). The motion will be granted.

The complaint, filed under 11 U.S.C. § 547, seeks to avoid a $5,000 payment to the Defendant, Central Bank Illinois, N.A. (CBI), as a preference. By way of defense, CBI asserts, alternatively, that it was a secured creditor, that the payment was made in the ordinary course of business, and that it was outside the 90-day preference period if that period is calculated from the date of conversion.

## **LEGAL STANDARDS**

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). A motion may be filed by a party claiming relief or by a party against whom relief is sought. Fed.R.Civ.P. 56(a) and (b).

When a plaintiff moves for summary judgment, it bears the initial burden of proving its entitlement to judgment. *Firemen's Fund Ins. Co. v. Thien,* 8 F.3d 1307, 1310 (8th Cir. 1993). A moving party that bears the burden of persuasion at trial must support its motion with evidence that would entitle it to a directed verdict if not controverted at trial. *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir. 1992). A nonmoving party may defeat the motion by demonstrating the existence of a genuine dispute of material fact. Alternatively, where the moving party has the burden of proof, the nonmoving party may also defeat the motion by showing that the moving party's evidence is insufficient to permit a reasonable factfinder to return a verdict in favor of the moving party. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). Only if the moving party successfully establishes a *prima facie* case does the burden then shift to the nonmoving party to show

2

that there is a genuine issue of fact for trial. *Augustine v. GAF Corp.,* 971 F.2d 129, 132 (8th Cir. 1992). In considering a motion for summary judgment, the trial court must construe the evidence and all inferences that can reasonably be drawn therefrom in the light most favorable to the nonmoving party. *In re Chambers,* 348 F.3d 650, 654 (7th Cir. 2003).

**FINDING OF FACT**

1. The DEBTOR, Trappers Creek, LLC, filed its Chapter 11 petition on November 26, 2007.

2. The case was converted to Chapter 7, on the DEBTOR'S motion, on February 6, 2008.

3. The DEBTOR scheduled CBI as an undersecured creditor holding a total claim of $435,093.85, bifurcated into a secured portion of $107,500 and an unsecured portion of $327,593.85.

4. On June 11, 2008, CBI filed a Proof of Claim asserting an unsecured claim in the amount of $355,587.11.

5. Two notes are attached to CBI's Proof of Claim evidencing a closed end loan of $410,000 on October 4, 2006 and a $50,000 open end line of credit on January 22, 2007.

6. The DEBTOR scheduled certain personal property as having a value of $107,500, including food and liquor inventory, kitchen equipment, bar equipment and furnishings, all related to its restaurant business.

7. On January 16, 2008, CBI filed a Motion for Relief from the Automatic Stay claiming a security interest in substantially all of the DEBTOR'S personal property.

8. By order entered February 15, 2008, without opposition from the DEBTOR, the automatic stay was modified to permit CBI to repossess and foreclose its security interest in the DEBTOR'S personal property.

9. In its Response to Motion for Summary Judgment, CBI asserts and admits that after relief from the stay was obtained, it repossessed and promptly liquidated its collateral for "approximately $100,000," leaving an unsecured deficiency balance of $355,587.11.

10. The disputed payment of $5,000 was paid by the DEBTOR to CBI on October 25, 2007, thirty-two days before the Chapter 11 bankruptcy petition was filed.

11. CBI admits in its Answer that the payment was on account of an antecedent debt.

12. CBI does not admit that the DEBTOR was insolvent at the time of the transfer.

13. CBI does not admit that the payment enabled it to receive more than it would if the payment had not been made and it had been paid under the Chapter 7 distribution scheme.

14. The TRUSTEE alleges, and CBI does not dispute, that when the $5,000 payment was made, the DEBTOR was behind on the monthly payments so that the payment was applied partially to the May, 2007 payment and partially to the June, 2007 payment.

15. The regular monthly payment amount that the DEBTOR was obligated to pay on the term loan was $3,098.28.

## ANALYSIS

As an initial matter, CBI argues that the 90-day preference period should be computed from the date of conversion, not the date of the Chapter 11 filing. This position is incorrect as a matter of law pursuant to Section 348 dealing with the effect of conversion. It is the date of filing, not conversion, that controls here. *See Vogel v. Russell Transfer, Inc.*, 852 F.2d 797 (4th Cir. 1988). So the $5,000 payment was made during the applicable 90-day preference period.

Whether CBI was an undersecured creditor and, if so, the effect of that status is the major focus of the parties. A payment to a fully or over-secured creditor is not avoidable. But a payment to an undersecured creditor is avoidable. The distinction is summarized in COLLIER'S as follows:

> Generally, payments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a chapter 7

4

>liquidation. Payments to a partially secured creditor from property not covered by its lien, however, have a preferential effect, because in a chapter 7 liquidation that creditor would receive a distribution for the full value of its secured claim, in addition to the payments already received. In other words, the payment would ordinarily be applied to the unsecured portion of the undersecured debt, but would not reduce the lien or increase the debtor's equity in the collateral. (Footnotes omitted).

5 COLLIER ON BANKRUPTCY ¶ 547.03[7] (15th ed.rev.).

One question at issue is the proper date to use for the secured status determination: is it the date of the transfer or the date of the bankruptcy filing? A clear majority of courts use the filing date as the proper time to determine a creditor-defendant's secured status. This result is consistent with the language of Section 547(b)(5), which focuses the inquiry on the distribution to the creditor by the Chapter 7 trustee as part of the administration of the bankruptcy estate. *In re Rambo,* 297 B.R. 418, 431-32 (Bankr.E.D.Pa. 2003) (fixing value for the purpose of § 547(b)(5) analysis on what a trustee would receive assuming a hypothetical sale of the property by the trustee); *In re Suffola, Inc.,* 2 F.3d 977, 985 (9th Cir. 1993) (because hypothetical liquidation is constructed as of the petition date, a transfer may be avoided when the creditor is fully secured at the time of payment but is undersecured on the petition date); *Batlan v. Transamerica Commercial Finance Corp.,* 237 B.R. 765 (D.Or. 1999) (petition date is relevant date for purpose of the hypothetical liquidation test under § 547(b)(5)); *In re Schwinn Bicycle Co.,* 182 B.R. 514, 523 (Bankr.N.D.Ill. 1995); *In re Paris Industries Corp.,* 130 B.R. 1 (Bankr.D.Me. 1991); *In re Buyer's Club Markets, Inc.,* 123 B.R. 895 (Bankr.D.Colo 1991). *See, also,* D. Carlson, *Security Interests in the Crucible of Voidable Preference Law,* 1995 U.Ill.L.Rev. 211, 265 (1995) (valuation should be as of petition date so

that secured creditor takes the consequence of appreciation or depreciation of collateral between date of challenged transfer and date of petition).[1]

A related issue is the proper valuation standard. Under Section 506(a), collateral is to be valued in light of the purpose of the valuation. Under the Chapter 7 liquidation test of Section 547(b)(5), the purpose of the valuation is to determine the dollar amount of proceeds that the secured creditor would realize from a liquidation of its collateral. Thus, the value should be determined based upon the proceeds that the creditor would realize upon a commercially reasonable disposition of the collateral, net of sale expenses. *In re Telesphere Communications, Inc.,* 229 B.R. 173, 180 (Bankr.N.D.Ill. 1999). Where the collateral has been liquidated postpetition, the actual outcome of the liquidation, i.e., the proceeds realized, ordinarily satisfies the trustee's burden to produce evidence of what the creditor would realize upon a commercially reasonable disposition of its collateral. *See In re Cavalier Industries, Inc.,* 2002 WL 975868 n.13 (Bankr.E.D.Pa. 2002).

In its Response, CBI states affirmatively that following conversion of the case to Chapter 7 it took possession of its collateral and promptly liquidated it for "approximately $100,000," leaving a deficiency balance in excess of $350,000. The actual outcome of CBI's liquidation of its collateral is determinative and satisfies the TRUSTEE'S burden under Section 547(b)(5) to prove that CBI was not a fully secured creditor. In fact, CBI's collateral was worth less than 25% of the loan balance as of the petition date.

---

[1] The case at bar involves the relatively simple scenario where the transfer sought to be avoided was a single prepetition payment to a creditor with a lien on fixed collateral. This Court's determination that the petition date is proper time for valuation of the collateral for purposes of Section 547(b)(5) is limited to the factual circumstances that exist in this case. This Court expressly refrains from addressing whether the same standard would apply in a more complex case involving, for example, a floating lien, a release of collateral, a payment from the proceeds of collateral or a setoff. *See, e.g., Matter of Prescott,* 805 F.2d 719 (7th Cir. 1986); *In re Telesphere Communications, Inc.,* 229 B.R. 173 (Bankr.N.D.Ill. 1999); *In re Schwinn Bicycle Co.,* 200 B.R. 980 (Bankr.N.D.Ill. 1996).

CBI argues that it believed it was fully secured when the challenged transfer was made on October 25, 2007, and that it had no knowledge that it was undersecured until after bankruptcy. This argument is a nonstarter. CBI was actually undersecured, which is the statutory standard. That an undersecured creditor has a mistaken belief that it is fully secured and that it didn't become aware of its mistake until later is simply not relevant to the inquiry under Section 547(b)(5).

CBI also argues that the DEBTOR continued to operate for several months after the preferential payment was made and if the DEBTOR was insolvent at the time of the payment, CBI had no knowledge of it. Here again, a creditor's knowledge or belief about a debtor's solvency is not relevant to whether a transfer may be avoided as a preference. *In re Control Elec., Inc.*, 91 B.R. 1010, 1015 (Bankr.N.D.Ga. 1988). Nonetheless, a debtor's insolvency is an element of the *prima facie* case for preference avoidance. 11 U.S.C. § 547 (b)(3). But the trustee is aided by a statutory presumption of insolvency during the 90 days before filing. 11 U.S.C. § 547(f). The presumption is rebuttable, but the creditor has the burden to produce some evidence that the debtor was not in fact insolvent at the time of the transfer. *In re Roblin Industries, Inc.*, 78 F.3d 30, 34 (2nd Cir. 1996). CBI presented no evidence of solvency, so the Section 547(b)(3) element is deemed satisfied by operation of the presumption.

**ORDINARY COURSE DEFENSE**

As the moving party, the TRUSTEE must establish that the evidence does not permit a determination that the challenged transfer was made in the ordinary course of business pursuant to Section 547(c)(2). That is, the TRUSTEE must demonstrate that the record lacks

7

substantial evidence to sustain a necessary element of the defense on which CBI as the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); *In re Diagnostic Instrument Group, Inc.,* 283 B.R. 87, 92-93 (Bankr.M.D.Fla. 2002). Once the TRUSTEE makes such a showing the burden shifts to CBI to demonstrate the presence of a genuine issue as to that fact. *Diagnostic Instrument Group, Inc.,* 283 B.R. at 93.

In his Statement of Material Facts, the TRUSTEE makes an evidentiary record that demonstrates the following facts:

1. The $5,000 payment made on October 25, 2007, was applied by CBI to Loan No. 47172, the term loan.

2. The regular monthly payment amount on the term loan was $3,098.28.

3. The DEBTOR failed to make a payment on the term loan in February, March, April and June, 2007.

4. Of the $5,000 payment made October 25, 2007, CBI credited the sum of $3,098.28 to the payment past due for May, 2007, and the sum of $1,901.72 as a partial payment of the payment past due for June, 2007.

These facts are not disputed by CBI.

Late payments are usually not protected from preference avoidance by the ordinary course of business defense. *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.L.No. 109-8, 119 Stat. 23 (April 20, 2005), altered the ordinary course of business defense of Section 547(c)(2). The defense may now be successfully sustained by a creditor who proves that a challenged transfer was either (1) made in the ordinary course of business or financial affairs of the debtor and the transferee, or (2) made according to

8

ordinary business terms. 11 U.S.C. § 547(c)(2). The first alternative typically requires the creditor to establish a baseline of dealings to enable the court to compare the payment practices during the preference period with the prior course of dealing between the parties. *In re marchFirst, Inc.,* 381 B.R. 689, 696 (Bankr.N.D.Ill. 2008). Under the second alternative, "ordinary business terms" refers to the range of terms that encompasses the practice in which firms similar in some general way to the creditor in question engage. *Tolona Pizza,* 3 F.3d at 1033.

The vast majority of reported cases concerning Section 547(c)(2) involve trade creditors. Although lending institutions are not precluded from raising the defense, *In re Liberty Livestock Co.,* 198 B.R. 365, 373-74 (Bankr.D.Kan. 1996), such institutions seldom do in the context of late payments on a term loan, since a practice of regular acceptance of late payments is contrary to standard banking practices and disapproved by the regulatory authorities that oversee and audit banking operations. *In re Pearson Industries, Inc.,* 152 B.R. 546, 554-55 (Bankr.C.D.Ill. 1993) (banking industry recognizes that delinquency is not an ordinary business event so payment on a delinquency is not an ordinary course payment). *Cf., In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.,* 151 B.R. 492 (W.D. Ark. 1993) (S&L president testified that regulatory agency encouraged S&L to "work with" borrowers during real estate crisis).

CBI presented no evidence and made no argument in support of the ordinary course of business defense, so the only issue is whether the TRUSTEE satisfied his initial burden to establish that there is no genuine issue of material fact with respect to both alternatives under Section 547(c)(2). If so, the TRUSTEE prevails.

9

Addressing the second alternative first, there is no evidence in the record that the acceptance of late payments on term loans is so common in the banking industry as to fall within the scope of "ordinary business terms." In the absence of any such evidence, no reasonable trier of fact could find for CBI on its defense under Section 547(c)(2)(B). *See In re Tax Reduction Institute,* 148 B.R. 63, 75-76 (Bankr.D.C. 1992).

With respect to the first alternative, it is undisputed that the challenged transfer was made when the loan was five months in arrears. It is undisputed that the amount of the $5,000 payment was almost $2,000 greater than the regular monthly payment amount. It is also undisputed that the challenged transfer was the first and only time that a payment was made in the irregular amount of $5,000. There is no reasonable interpretation of these facts, or of any inferences to be drawn therefrom, that would support a determination that the challenged transfer is excepted from avoidance under Section 547(c)(2)(A). The TRUSTEE has carried his burden.

## **CONCLUSION**

For the foregoing reasons, the Court determines, based upon the facts in the record, that the TRUSTEE has proved each of the elements of his *prima facie* case under Section 547(b) and that CBI has not produced evidence sufficient to create a genuine dispute as to any material fact.

The Court further determines that the undisputed substantial payment default that existed as of the date of the challenged payment precludes the affirmative defense asserted by CBI under Section 547(c)(2).

Accordingly, the TRUSTEE is entitled to judgment as a matter of law. The Motion for Summary Judgment will be granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###